# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Andre Jamar Coe, <br>     Plaintiff, <br><br> v. <br><br> David Zook, et al., <br>     Defendants. | 1:18cv714 (AJT/IDD) |

## MEMORANDUM OPINION & ORDER

Virginia inmate Andre Coe initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. Broadly, he alleges that defendants David Zook ("Zook"), S. Isaac ("Isaac"), and Gregory Holloway ("Holloway") (collectively "defendants") violated his due process rights by failing to provide him with notice that several messages intended for his receipt were screened, rejected for being in violation of prison policy, and returned to their sender. Dkt. No. 4. Defendants filed a motion to dismiss [Dkt. No. 18] and provided plaintiff with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 20]. Plaintiff later filed an opposition to defendants' motion [Dkt. No. 22]. For the reasons that follow, defendants' motion to dismiss will be granted, and the underlying complaint will be dismissed.

## I. Background

The following allegations are assumed true for the purpose of ruling on defendants' motion to dismiss. In January 2018, plaintiff "was experiencing difficulty receiving secure messages (emails) and attachments (photographs)" from non-incarcerated individuals. Dkt. No. 4, p. 6.[1] On or about February 1 of that year, plaintiff filed an informal complaint regarding the

---

[1] This Memorandum Opinion will cite to ECF-assigned page numbers when referring to plaintiff's amended complaint.

issue. Id. at p. 7. Defendant Lieutenant Isaac, who "is designated to screen and reject emails and photographs," "censored Plaintiff's" correspondence and responded to the complaint by stating that "a number of pictures sent to [plaintiff] by 'Ms. Turner' were in violation of policy and returned to customer." Id. at pp. 3, 7.

On or about February 13, 2018, plaintiff filed a grievance, complaining that he had not received electronic notification of the non-delivery of the messages he anticipated he would receive. Id. Defendant Warden Zook rendered plaintiff's grievance unfounded and stated that Virginia Department of Corrections ("VDOC") officials were not responsible for providing inmates with notice of non-delivery of correspondence and that JPay, a private vendor responsible for providing digital communication services, was instead responsible. Id. at pp. 7, 11. Defendant Holloway, a VDOC Regional Administrator, upheld defendant Zook's decision on March 23, 2018. Id. at p. 7.

## II. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if "the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Nemer Chevrolet, Ltd. v. Consumeraffairs.com Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). A plaintiff must therefore allege facts in support of each element of each claim he or she raises;

"threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Iqbal, 566 U.S. at 678.

### III. Analysis

Plaintiff's complaint asserts that all three defendants are liable to him for violating his due process rights and that defendants Zook and Holloway are liable to him under a theory of supervisory liability. As explained below, plaintiff has not satisfactorily stated a claim under either theory.[2]

1. **Due Process**

Plaintiff claims that defendants' actions infringed his Fourteenth Amendment right to due process. The Fourteenth Amendment holds that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIX, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty'" see Wilkinson v. Austin, 545 U.S. 209, 221 (2005), or, in some instances, through state action, see Sandin v. Connor, 515 U.S. 472,

---

[2] Defendants' brief addresses legal theories seemingly not raised by plaintiff. For example, defendants devote time to the proposition that plaintiff had no property interest in receiving the censored attachments and that he therefore cannot state a due process violation. But in his complaint, plaintiff emphasizes that his theory regarding his due process claim is that defendants infringed on his liberty interests, not his property interests. See Dkt. No. 6, p. 8 ("[T]he exhaustion of plaintiff's administrative remedies was based solely on the fact that plaintiff did not receive any notification of the rejection . . . . Furthermore, the state-created regulation "Operating Procedure 803.1" does not state that plaintiff need to have a property interest in said attachments to receive notification of their censorship which is the underlying premise of this civil action."). Accordingly, the Court deems the property interest argument waived and will not analyze plaintiff's claim through that lens.

484 (1995). In this case, plaintiff asserts that he possessed liberty interests arising out of both the Constitution and state law.

### A. First Amendment Liberty Interest

The First Amendment interest of inmates and non-inmates to communicate by mail "is plainly a liberty interest within the meaning of the Fourteenth Amendment." Procunier v. Martinez, 416 U.S. 396, 418 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989). When a correctional facility rejects or otherwise denies an inmate access to his mail, the inmate must be notified of the rejection, the author of the letter must be given a reasonable opportunity to protest the rejection, and any complaints related to the rejection must be referred to a prison official other than the person who originally disapproved of transmission of the material. Procunier, 416 U.S. at 419.

Plaintiff fails to allege that he was not afforded this level of process. His complaint avers that, after he failed to receive messages and attachments he had anticipated receiving, he submitted a request form to inquire about the status of those communications. See Dkt. No. 6, p. 6. Plaintiff admits that "[d]efendant S. Isaac responded to said complaint ... stating that a number of pictures sent to [plaintiff] ... were in violation of policy and returned to customer." Id. at p. 7. Accordingly, the complaint asserts that plaintiff did receive notice of the rejected delivery, albeit only after personally inquiring about his correspondence. Additionally, plaintiff fails to allege that the author of the rejected messages did not have an opportunity to protest the non-delivery. Finally, plaintiff admits that defendant Zook adjudicated his initial grievance and that defendant Holloway adjudicated his appeal of that grievance's denial. These individuals were not the "prison official[s] ... who originally disapproved of the correspondence" in question; plaintiff states that it was "Defendant Isaac [who] censored plaintiff's emails and photographs." See Dkt. No. 6, p. 8.

4

Plaintiff makes much of the fact that he was not proactively provided notice of the rejection once it occurred and that he instead received word of the rejection only after he inquired about the status of his incoming messages. Although proactive provision of notice by prison staff is almost certainly what the Supreme Court envisioned in Procunier, where an inmate receives actual notice of mail rejection or censorship—from prison staff or through his own investigative efforts—and is then not denied an opportunity to protest that rejection or censorship, he has been afforded the minimal due process protections outlined by the Supreme Court. Courts nationwide are in consensus on this matter. See, e.g., Knight v. Lombardi, 952 F.2d 177, 179 (8th Cir. 1991) (finding district court properly dismissed due process claim where inmate received notice of mail seizure only after "he complained in writing to [prison officials]" and was subsequently not denied opportunity to file grievance to protest the seizure); Lena v. DuBois, 1994 WL 99940, at *1 (1st Cir. Mar. 23, 1994) (finding no procedural due process violation where inmate "was not provided with prompt, written notice of [delivery]" but "was eventually so notified and was able to pursue an appropriate appeal"); Skibo v. Rhodes, 2012 WL 1574584, at *4 (W.D. Okla. Apr. 3, 2012) (finding no denial of due process where inmate "became aware of the [rejected] letter ... when he inquired about incoming correspondence" and then had an opportunity to object to the letter's rejection). Consequently, plaintiff has failed to allege that he was denied the level of process he was owed by virtue of his First Amendment liberty interest.

### B. *State-Created Liberty Interest*

Plaintiff additionally argues that defendants' failure to abide by VDOC Operating Procedure ("OP") 803.1 represents a due process violation. OP 803.1 states that, when a message is not delivered to an inmate, "[n]otification that the message and/or attachment were censored and returned to the sender as well as the reason for the return will be provided

5

electronically to the offender on their media device." VDOC OP 803.1, § VIII(C)(6)(a); Dkt. No. 6-1. Plaintiff is correct that state-issued rules such as OP 803.1 can provide the foundation for cognizable liberty interests. See Prieto, 780 F.3d 245. Unfortunately, plaintiff's argument in support of the notion that this specific state rule created a liberty interest is without merit.

Plaintiff cites to Ky. Dep't of Corr. v. Thompson, 490 U.S. 454 (1989), in support of the proposition that VDOC's use of restrictive language makes mandatory the instructions set out in OP 803.1, precipitating the existence of a liberty interest in the specific type of notice articulated in the document. But courts no longer look strictly to the language of a prison regulation to identify a protected liberty interest:

> [T]he search for a negative implication [or entitlement] from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in Wolff and Meachum. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-84. The Fourth Circuit recently summarized the rule more succinctly, stating that, "while a state statute or policy may create liberty interests giving rise to Due Process protection, this is so only if the denial of such an interest imposes atypical and significant hardship on [an] inmate." Prieto at 249 (internal quotations omitted). Plaintiff has not offered even a conclusory allegation that defendants' failure to provide him digital notice of mail censorship represents an atypical or significant hardship. Accordingly, it appears that plaintiff claims defendants violated his due process rights merely by failing to abide by the VDOC's written procedures. To the extent this is plaintiff's position, he has no viable claim. See Riccio v. Cty. of Fairfax, 907 F.2d 1459 (4th Cir. 1990) (holding that if a state law grants more

6

procedural rights than the Constitution requires, a state's failure to abide by its law does not amount to a federal violation).

****

Because the complaint (1) makes clear that defendants afforded plaintiff the process he was due by way of the liberty interest afforded by the First Amendment and (2) fails to establish that plaintiff was entitled to the type of notice described in VDOC OP 803.1, he has failed to state a procedural due process claim.

2. **Supervisory Liability**

Plaintiff asserts in his complaint that defendants Zook and Holloway are liable to him under a theory of supervisory liability. Supervisory officials may only be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). To establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations and internal quotations omitted). The Court need not thoroughly examine plaintiff's allegations through this lens, though, because plaintiff's failure to successfully plead a due process claim forecloses the possibility that plaintiff could state such a claim against a supervisory official. See Doe v. Rosa, 664 F. App'x 301, 303 n.2 (4th Cir. 2016) (citing Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991)).[3]

---

[3] And, as defendants note, standing alone, Zook and Holloway's rejections of plaintiff's grievance appeals "do[] not cause or contribute to [a constitutional] violation." Brown v. Va.

7

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss [Dkt. No. 18] is GRANTED; and it is hereby

ORDERED that plaintiff's complaint be and is DISMISSED.

To appeal this decision, plaintiff must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order. See Fed. R. App. P. 4(a). A written notice of appeal is a short statement indicating a desire to appeal this Order and noting the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the Court. Failure to file a timely notice of appeal waives the right to appeal this decision.

The Clerk is directed, pursuant to Rule 58 of the Federal Rules of Civil Procedure, to enter final judgment in favor of defendants David Zook, S. Isaac, and Gregory Holloway; to send a copy of this Memorandum Opinion & Order to plaintiff pro se and to counsel of record for defendants; and to close this civil action.

Entered this 31st day of Jan. 2020.
Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge

---

Dep't of Corr., No. 6:07cv33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (quoting George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (which itself states, "[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not").